# Akin

June 3, 2024

**VIA ECF**

Honorable Mary Kay Vyskocil
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 18C
New York, NY 10007

Re: *20230930-DK-Butterfly-1, Inc. v. HBC Investments LLC et al.*, No. 1:24-cv-03370 (MKV) (SN)

Dear Judge Vyskocil:

Defendants HBC Investments LLC and Hudson Bay Capital Management LP (together, "Hudson Bay") submit this letter pursuant to Your Honor's Individual Rule 4(A)(i) to request a pre-motion conference for leave to move to dismiss the complaint (ECF Doc. No. 1). Plaintiff's counsel informs us that Plaintiff anticipates that it will oppose the motion to dismiss, but consents to Hudson Bay's proposed briefing schedule.

Plaintiff purports to assert claims under Section 16(b) of the Securities and Exchange Act of 1934. Section 16 addresses "short-swing" trading by "statutory insiders"—officers, directors, or greater than 10% beneficial owners of a company's stock. *See* 15 U.S.C. § 78p(b). Section 16(b) requires such statutory insiders to disgorge any "short-swing" profits they derive from so-called matching trades executed within six months of each other to the issuer. *Id.* Section 16(b) is a strict liability statute. Given its strict liability regime, courts have recognized that Section 16 should be enforced within "narrowly drawn limits." *Gollust v. Mendell*, 501 U.S. 115, 122 (1991) (citation omitted); *see also Rubenstein v. Int'l Value Advisers, LLC*, 959 F.3d 541, 548 (2d Cir. 2020).

The Complaint alleges that Hudson Bay was a statutory insider that engaged in short-swing trading of securities issued by Bed Bath & Beyond Inc. ("BBBY" or the "Company"). Specifically, the Complaint alleges that Hudson Bay was a statutory insider by virtue of beneficially owning more than 10% of BBBY's common stock. (Cplt. ¶ 334.) To be clear, Hudson Bay never beneficially owned, or attempted to own, more than 10% of BBBY's common stock. Indeed, pursuant to the clear contractual terms governing Hudson Bay's BBBY investment, Hudson Bay *could not* beneficially own more than 10% of BBBY's common stock.

Specifically, Hudson Bay's investment in BBBY was at all times subject to beneficial ownership limitation provisions, also known as "blockers." The "blocker" provisions prohibited Hudson Bay from acquiring—and BBBY from providing to Hudson Bay—shares to the extent that such acquisition would result in Hudson Bay beneficially owning more than 9.99% of BBBY's outstanding shares after the acquisition. (Cplt. Ex. A § 4(d); Ex. C § 1(f); Ex. E § 4.8.) Because the

1

**Akin**

parties' relevant agreements prohibited Hudson Bay from beneficially owning more than 10% of BBBY common stock, Section 16(b) does not apply. The Complaint should therefore be dismissed.

I.  **Background**

On February 7, 2023, Hudson Bay was one of the participants in an underwritten BBBY public offering. In that offering, Hudson Bay acquired: (1) a warrant to purchase shares of BBBY common stock; (2) a warrant to purchase shares of BBBY Series A convertible preferred stock; and (3) BBBY Series A convertible preferred stock. BBBY's public offering provided the Company with equity financing that it needed to stay afloat at a time when BBBY was under tremendous pressure from its creditors and was attempting to avoid bankruptcy. These same creditors are, ironically, the ones trying to bring these claims now.

Specifically, convertible preferred stock and warrants represent sources of funding to a company—either immediately upon the cash purchase of convertible preferred stock or upon exercise of a warrant to purchase common stock or convertible preferred stock when the issuer receives the exercise price for each share from the investor. On March 30, 2023, BBBY and Hudson Bay entered into an exchange agreement which cancelled the remaining original warrant to purchase preferred stock in exchange for common stock and a contingent right to acquire additional shares.

That contingent right to acquire shares never came to pass. On April 23, 2023, the Company filed for bankruptcy. Plaintiff 20230930-DK-Butterfly-1, Inc. ("Plaintiff") is the bankruptcy wind-down entity of BBBY. A plan administrator and oversight committee of former BBBY creditors control Plaintiff. They purportedly seek to recover assets for distribution to BBBY's creditors. In connection with that objective, Plaintiff pursues these facially deficient claims which attempt to stretch Section 16(b) well beyond its narrowly defined parameters in the hope of generating a payout to the lenders that control Plaintiff and perhaps other creditors.

II.  **The Blockers Prevented Hudson Bay from Beneficially Owning More than 10% of BBBY's Shares**

Quite simply, Hudson Bay was never a statutory insider, and Section 16(b) does not apply. The common stock warrant, convertible preferred stock, and exchange agreement were all subject to blockers setting 9.99% beneficial ownership limitations. Such blocker provisions prevent holders from beneficially owning shares above the limitation because they prohibit exercise or conversion above that limit. *See, e.g.*, *Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 15-17 (2d Cir. 2001); *see also* Romeo & Dye Section 16(b) Treatise, § 2.03 ("a blocker provision prevents a holder" of derivative securities "from being the beneficial owner, for purposes of the ten percent owner calculation"); *Schaffer ex rel. Lasersight Inc. v. CC Invs., LDC*, 115 F. Supp. 2d 440, 443 (S.D.N.Y. 2000) ("holders of convertible securities with conversion caps are not statutory insiders under Section 16"); *Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 448 (S.D.N.Y. 2001) (blocker prevented defendant from beneficially owning 5% of stock).

**Akin**

Although Plaintiff concedes that blockers generally preclude liability, it claims that the blockers governing Hudson Bay's BBBY securities were ineffective. To the contrary, the blockers were not merely effective, but unambiguous and robust.

Hudson Bay never acquired BBBY shares in the open market. Consequently, Hudson Bay's rights to BBBY shares were governed exclusively by its agreements with BBBY regarding its warrants and convertible preferred shares. Those agreements in turn each included applicable blocker provisions. Under the blocker provisions, Hudson Bay was precluded from exercising or converting these securities, and BBBY was prohibited from allowing Hudson Bay to do so, if such exercise or conversion would cause Hudson Bay to "beneficially own in excess of 9.99% (the 'Maximum Percentage') of the shares of Common Stock outstanding immediately after giving effect to such exercise." (Cplt. Ex. A§ 4(d); Ex. C § 1(f); Ex. E § 4.8.)

The blockers were straightforward and unequivocal. Simply put, even if Hudson Bay *had* attempted to convert or exercise shares that would result in Hudson Bay beneficially owning more than 9.99% of BBBY's stock, such attempts would be deemed "*null and void and treated as if never made.*" (Cplt. Ex. A§ 4(d) (emphasis added); Ex. C § 1(f) (same); Ex. E § 4.8 (same); *see also* Ex. A § 4(d) ("any Blocked Shares shall be held in abeyance until such time as the delivery of such Blocked Shares would not" violate the 9.99% blocker limitation).) Indeed, any theoretical shares issued in excess of the beneficial ownership limitation would have likewise been "deemed null and void and . . . cancelled ab initio." (Cplt. Ex. A§ 4(d); Ex. C § 1(f); Ex. E § 4.8.) Hudson Bay accordingly would have no "power to vote or to transfer the Excess Shares." (Cplt. Ex. A § 4(d); Ex. C § 1(f); Ex. E § 4.8.) The parties could not waive or amend the blocker provisions. (Cplt. Ex. A §§ 4(d), 30(b); Ex. C §§ 1(f), 11, 30(b).)

Given these multiple preclusive provisions, the blockers rendered Hudson Bay's ability to obtain 10% or more beneficial ownership a contractual impossibility. Even if excess shares *were* issued—and they were not—Hudson Bay could not vote or transfer such shares, extinguishing the essential indicia of beneficial ownership. In other words, Hudson Bay could have no beneficial ownership over such shares. *See Levy,* 263 F.3d at 10 (finding blocker effective where it prohibited exercise or conversion exceeding the cap and allowed the holder to revoke any exercise to the extent it would result in the ownership of excess shares).

For all these reasons, Hudson Bay could not have been a statutory insider subject to Section 16(b). Hudson Bay requests a pre-motion conference to file a motion to dismiss the Complaint. Hudson Bay respectfully requests the following briefing schedule for its motion: (1) Hudson Bay's motion and supporting papers due July 11, 2024; (2) Plaintiff's response due September 6, 2024; and (3) Hudson Bay's reply due September 27, 2024. Plaintiff consents to this schedule.

**Akin**

Respectfully submitted,

Douglas A. Rappaport

cc: All Counsel