## James A Hunter
### ATTORNEY AT LAW

Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohocken, Pennsylvania 19428

TELEPHONE  (484) 214-4697
FACSIMILE  (646) 462-3356

June 6, 2024

**BY ECF**

The Honorable Mary Kay Vyskocil
U.S. District Court, S.D.N.Y.
500 Pearl Street, Room 2230
New York, New York 10007

> Re:   *20230930-DK-Butterfly-1, Inc. v. HBC Investments LLC et al.*,
> No. 24-cv-3370 (MKV) (SN) (S.D.N.Y. filed May 2, 2024)

Dear Judge Vyskocil:

I write on behalf of Plaintiff 20230930-DK-Butterfly-1, Inc., f/k/a Bed Bath & Beyond Inc. ("BBBY"), in response to Douglas Rappaport's June 3 letter on behalf of Defendants HBC Investments LLC and Hudson Bay Capital Management LP (collectively, the "Hudson Bay Defendants"). Should the Court grant the Hudson Bay Defendants leave to file a motion to dismiss, BBBY expects to stand on its pleading and oppose the motion.[1]

**I.        The Allegations**

The Complaint alleges a single count for recovery of more than $300 million in "short-swing" profit under Section 16(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78p(b). The Hudson Bay Defendants allegedly realized this profit through a trading program that to BBBY's knowledge is unprecedented in its scale, speed, and complexity. *See* Compl. ¶¶ 71-89. No court has ever endorsed a "blocker" to immunize a defendant against liability in a trading program this extreme. On the contrary, this Court has already found a similar blocker wanting in another Section 16(b) case brought against a Hudson Bay affiliate. *See id.* ¶ 188 (citing *Greenberg v. Hudson Bay Master Fund Ltd.*, No. 14-cv-5226 (DLC), 2015 U.S. Dist. LEXIS 62236 (S.D.N.Y. May 12, 2015)). The Hudson Bay Defendants' aggressive trading has recently drawn scrutiny from other quarters as well. *See* MoviePass, MovieCrash (HBO Documentary Films 2024) (attributing the collapse of another struggling company in part to a predatory financing by Defendant Hudson Bay Capital Management LP, which allegedly helped fan retail investor enthusiasm to flip cheap stock at inflated prices).

---

[1] Our expected response is based on the content of the Hudson Bay Defendants' pre-motion letter. BBBY respectfully reserves the right to respond differently (such as by filing an amended complaint under Rule 15(a)(1)) after reviewing the motion.

The Honorable Mary Kay Vyskocil
June 6, 2024
Page 2

   The Complaint alleges that the Hudson Bay Defendants made hundreds of thousands of purchases and sales of BBBY's equity securities in the space of a few weeks, all while beneficially owning more than 10% of BBBY's common stock.  Compl. ¶¶ 19-26.  The proposed motion will not challenge the sufficiency of the Complaint's allegations as to the transactions or the profit realized.  The only issued raised is whether the Complaint sufficiently alleges that the Hudson Bay Defendants beneficially owned more than 10% of BBBY's common stock.  *See* Dkt. 16 at 1.  On that issue, the Complaint does not ask the Court to "stretch" the law, *id.* at 2, only to apply it.

## II.   The Applicable Law

   The applicable law was handed down in *Levy v. Southbrook International Investments, Ltd.*, 263 F.3d 10, 13-17 (2d Cir. 2001).  The Second Circuit held in *Southbrook* that the beneficial ownership limitation of a conversion cap, or "blocker," should be respected as long as the limitation is binding and effective.  *Id.* at 14 ("An Investor Subject to an Effective, Binding Conversion Cap of 4.9% is Not a More Than 10% Beneficial Owner of the Underlying Equity Stock").  If the limitation is found to be illusory, then the blocker should be disregarded:

> When the limitations provided by conversion caps are discovered to be illusory or a sham, *they should be disregarded and the courts should analyze the case as though no such limitations existed.*

*Id.* at 17 n.5 (BBBY's emphasis).

   This last passage was quoted from an amicus brief submitted by the SEC at the Second Circuit's invitation.  Br. of the SEC as Amicus Curiae at 25, *Southbrook*, 263 F.3d 10.  The amicus brief listed factors that distinguish binding and illusory conversion caps.  *Id.*  These factors are reproduced in the Complaint.  Compl. ¶ 157.  As a reasonable interpretation of the beneficial ownership rules, the SEC's guidance controls, supplying an additional source of law for this case.  *See Press v. Quick & Reilly*, 218 F.3d 121, 128 (2d Cir. 2000); *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, No. 06 Civ. 2692 (KMW) (RLE), 2008 U.S. Dist. LEXIS 75459, at *33 (S.D.N.Y. Sept. 26, 2008), *aff'd*, 684 F.3d 36 (2d Cir. 2012).

## III.   Analysis

   The Complaint alleges that the blockers satisfy few of the SEC's criteria and have *none* of the indicia of a binding limitation on beneficial ownership.  Specifically, the Complaint alleges that (1) the blockers served no independent compliance or regulatory function but were drafted by the Hudson Bay Defendants only to avoid the disclosure and disgorgement obligations of the federal securities laws, *see* Compl. ¶¶ 160-161; (2) the blockers in the Common Warrants were purely contractual, and thus waivable or amendable at any time, *see id.* ¶¶ 162-167; (3) BBBY had no interest in enforcing the blockers and an incentive not to enforce them, reducing the blockers to an honor system of self-policing by the Hudson Bay Defendants, *see id.* ¶¶ 168-177; (4) BBBY had no way to enforce the blockers even if it wanted to because it could

The Honorable Mary Kay Vyskocil
June 6, 2024
Page 3

not know how much stock the Hudson Bay Defendants held and was contractually barred from challenging a conversion or exercise request, *see id.* ¶¶ 178-185; (5) the compliance representations in the conversion and exercise requests erroneously excluded shares from the beneficial ownership calculation, rendering the representations unreliable on their face, *see id.* ¶¶ 186-190; (6) the Hudson Bay Defendants habitually undercounted their beneficial ownership, wrongfully excluding shares they had the right to acquire, vote, and transfer, *see id.* ¶¶ 191-211; (7) the 9.99% cap was repeatedly exceeded, with the Hudson Bay Defendants beneficially owning more than 10% of BBBY's common stock from February 7 to February 10, and again from March 20 to March 22, *see id.* ¶¶ 230-263; and (8) the Hudson Bay Defendants made nearly 20 conversion or exercise requests in breach of the 9.99% cap, all of which were fulfilled, and none of which was ever withdrawn, nullified, or voided, *see id.* ¶¶ 264-268.

The Hudson Bay Defendants do not acknowledge these well-pleaded allegations, much less explain how the allegations are infirm. Their pre-motion letter cites two opinions for the proposition that "blocker provisions prevent holders from beneficially owning shares above the limitation because they prohibit exercise or conversion above that limit." Dkt. 16 at 2 (citing *Schaffer v. CC Invs., LDC*, 115 F. Supp. 2d 440, 443 (S.D.N.Y. 2000); and *Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 448 (S.D.N.Y. 2001)). These cases, both filed pre-*Southbrook*, launched broadsides that could have applied to almost any conversion cap. *See, e.g.*, *Log on Am.*, 223 F. Supp. 2d at 448 ("Plaintiff asserts that it is entitled to relief under Section 13(d) because the 'conversion cap' does not prohibit *seriatum* conversions of the Preferred Stock . . . ."). These generic claims fall well short of the particularized allegations of regulatory evasion, sham formalism, and misconduct leveled here.

The Complaint's allegations are not "speculative," "threadbare," or "conclusory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). They are backed by extensive detail on the negotiation and execution of the financing, the number of securities held by the Hudson Bay Defendants from day to day, and the terms and timing of the conversion and exercise requests submitted. These precise, factually rich allegations raise a more than plausible claim that the blockers failed to place a genuinely binding and effective limit on the Hudson Bay Defendants' beneficial ownership of BBBY's common stock, and that the Hudson Bay Defendants are liable under Section 16(b).

BBBY will accordingly ask this Court to deny the motion to dismiss.

Respectfully submitted,

/s/ James A. Hunter

Copies by ECF: All Counsel of Record