UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 20230930-DK-BUTTERFLY-1, INC., f/k/a BED BATH & BEYOND INC.,<br><br>                    Plaintiff,<br><br>    -vs.-<br><br>HBC INVESTMENTS LLC and HUDSON BAY CAPITAL MANAGEMENT LP,<br><br>                    Defendants. | Civil Action No. 1:24-cv-03370-MKV |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
HBC INVESTMENTS LLC'S AND HUDSON BAY
<u>CAPITAL MANAGEMENT LP'S MOTION TO DISMISS</u>**

Douglas A. Rappaport
Kaitlin D. Shapiro
Richard J. D'Amato
Michael Chen
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036

*Counsel for Defendants HBC Investments LLC and
Hudson Bay Capital Management LP*

## TABLE OF CONTENTS

    **Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................3

    I.    The Opposition Fails to Address the Blockers' Plain Language ..............................3

    II.    The Blockers are Valid and Enforceable Under *Levy* ..............................................4

    III.    Plaintiff Does Not, and Cannot, Allege that the Blockers Were "Illusory" .............6

    IV.    Plaintiff's "Scheme to Evade" Argument is a Red Herring ...................................10

CONCLUSION ..............................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**                                                                **Page(s)**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
    677 F.3d 60 (2d Cir. 2012).................................................................................................7

*Avalon Holdings Corp. v. Gentile*,
    597 F. Supp. 3d 640 (S.D.N.Y. 2022)................................................................................7

*Chechele v. Standard General LP*,
    2021 WL 2853438 (S.D.N.Y. July 8, 2021) ......................................................................7

*Chevron U.S.A., Inc. v. Natural Resources Defense Council*,
    467 U.S. 837 (1984), *rev'd*, *Loper Bright Enterprises v. Raimondo*, 144 S. Ct.
    2244 (2024) ........................................................................................................................5

*Connell v. Johnson*,
    2020 WL 2748439 (S.D.N.Y. May 27, 2020) ...................................................................7

*Greenberg v. Hudson Bay Master Fund Ltd.*,
    2015 WL 2212215 (S.D.N.Y. May 12, 2015) ...................................................................8

*Levy v. Southbrook Int'l Invs., Ltd.*,
    263 F.3d 10 (2d Cir. 2001)..........................................................................................4, 10

*Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*,
    223 F. Supp. 2d 445 (S.D.N.Y. 2001)..............................................................................10

*Roth v. Solus Alt. Asset Mgmt. LP*,
    124 F. Supp. 3d 315 (S.D.N.Y. 2015)................................................................................5

*Roth v. Solus Alternative Asset Mgmt. LP*,
    258 F. Supp. 3d 364 (S.D.N.Y. 2017)............................................................................6, 9

**Other Authorities**

17 C.F.R. § 242.200 ..................................................................................................................6, 8

Peter J. Romeo & Alan L. Dye, Section 16 Treatise and Reporting Guide § 2.03
    (5th ed. 2019) .....................................................................................................................5

Hudson Bay submits this reply memorandum of law in further support of its motion to dismiss Plaintiff's Complaint (ECF No. 25, the "Motion").[1]

**PRELIMINARY STATEMENT**

In its Motion, Hudson Bay established that the unambiguous terms of the Blockers preclude Plaintiff's claim as a matter of law. Plaintiff's opposing memorandum (the "Opposition," ECF No. 38) does nothing to alter this conclusion. The Opposition instead entirely ignores the plain language of the Blockers, disregards applicable precedent, invents requirements that do not exist, and relies on the preposterous notion that an investor can sell a single share of stock multiple times prior to settlement. Plaintiff's arguments fail and the Complaint should be dismissed.

*First*, the Opposition fails to address the unambiguous Blocker provisions governing Hudson Bay's BBBY investment. Those terms plainly prevented Hudson Bay from beneficially owning more than 9.99% of BBBY's outstanding shares, and rendered any attempted conversions or exercises above that threshold "null and void" and "cancelled ab initio." The Opposition utterly fails to dispute, or even address, this unambiguous language. In fact, the words "null and void" and "cancelled ab initio" appear *nowhere* in the Opposition brief.

Plaintiff's argument that an anti-dilution letter agreement between Hudson Bay and BBBY—the so-called "Side Letter"—required BBBY to deviate from its obligations under the Blockers reflects Plaintiff's continued disregard of clear contractual terms. The Side Letter expressly required BBBY and Hudson Bay to "honor" the Blockers as "conditions" and "terms" of the Transaction Documents, and left BBBY free to seek any information it needed to do so.

*Second*, Plaintiff ignores binding Second Circuit authority that confirms the Blockers' validity. Specifically, the Second Circuit's *Levy* decision made clear that a court must assess

---

[1] Capitalized terms not otherwise defined shall have the meanings provided in the Motion.

1

whether a blocker provision "as a whole" effectuates "a clear prohibition" on an investor's ability to convert or exercise above the applicable threshold. The Blockers readily satisfy this test.

Disregarding this precedent, Plaintiff instead relies on facially invalid, legally baseless arguments about various cherry-picked "factors." For example, Plaintiff's argument that the Blockers were not adhered to in practice is entirely premised on the bizarre assertion that Hudson Bay could have sold the same shares twice. As even the most unsophisticated market participant knows, this proposition is facially invalid under the law and cannot save the Complaint.

Plaintiff's other factor-based arguments simply cannot be squared with *Levy*. The blocker in *Levy* did not satisfy most of Plaintiff's factors, but the *Levy* court nevertheless found it valid and enforceable. Indeed, the Blockers here were even *stronger* than those in *Levy*. Unlike the *Levy* blocker, the Blockers contained a specific enforcement mechanism that rendered any violative transactions "null and void," and prevented the parties from amending or waiving the Blockers. Plaintiff's request that this Court disregard Second Circuit precedent should be rejected.

Nor can Plaintiff credibly assert that the Blockers were a "scheme to evade" Section 16(b). As Plaintiff recognizes, blockers are a perfectly valid method by which an investor can *structure* transactions to prevent Section 16(b) liability.

Devoid of sound legal arguments, Plaintiff's Opposition casts aspersions on Hudson Bay's motivations and conduct, in the apparent hope of prejudicing the Court. These aspersions are both baseless and have nothing to do with the Blockers' validity. They certainly do not undermine the effective, heavily negotiated Blockers here, which are even stronger than the blockers other courts have upheld in dismissing Section 16(b) claims. Ultimately, nothing in the Opposition rescues Plaintiff's Complaint. Hudson Bay's Motion should be granted.

**ARGUMENT**

I.  **The Opposition Fails to Address the Blockers' Plain Language**

As a threshold matter, the Opposition does not even attempt to address the Blockers' plain, unambiguous language. In doing so, the Opposition effectively concedes that the Blockers' terms on their face defeat Plaintiff's claim.

As explained in the Motion, courts enforce blockers as written, like any other contractual provision. Here, the Blockers' plain language provided not only that Hudson Bay could *not* exercise or convert securities to acquire shares over the 9.99% threshold, but also that any *attempt* to provide Hudson Bay with shares over the threshold would be "null and void," "treated as if never made," and "cancelled ab initio." Indeed, the Blockers contain numerous, cumulative provisions precluding trading above 9.99%. The Opposition offers no other interpretation of the Blockers because there is none. The Blockers' unambiguous language dooms Plaintiff's claim.

In an attempt to distract from the clear application of the Blockers' language, Plaintiff grossly misrepresents the so-called "Side Letter." The Side Letter was nothing more than an anti-dilution agreement providing Hudson Bay with a right of first refusal for *future* capital raises. Moreover, far from being a means of evading the Blockers, the Side Letter expressly required compliance with the Blockers. Specifically, the Side Letter required that:

> The Company shall honor exercises . . . and conversions . . . and shall deliver the Conversion Shares, Additional Preferred Shares and Warrant Common Shares *in accordance with the terms, conditions and time periods* set forth in the Certificate of Amendment, Preferred Warrants and Common Warrants.

(Cplt. Ex. G § 2(n) (emphasis added).) The Blockers were indisputably "term[s]" of these documents, providing "conditions" to exercise and convert which the Side Letter required BBBY to "honor." (*Id.*) Thus, contrary to Plaintiff's puzzling assertions, the Letter *required* BBBY to enforce the Blockers. Further, despite Plaintiff's baseless argument otherwise, absolutely nothing

3

in the Side Letter barred BBBY from seeking information from Hudson Bay or taking steps to meet that obligation. Plaintiff's reliance on this Letter to avoid the clear application of the Blockers is yet another example of its desperate attempt to rescue a facially invalid claim.[2]

## II. The Blockers are Valid and Enforceable Under *Levy*

Contrary to Plaintiff's assertion, Hudson Bay has never argued that there is a "per se rule" that blockers are always valid and enforceable. (Opp. at 1, 6, 12.) That would be a dramatic and unnecessary overreach. Rather, Hudson Bay's position is that *these* Blockers were clearly valid and enforceable. Specifically, binding authority recognizes that a blocker's "validity" and enforceability is determined by an analysis of the contract's plain terms "as a whole," like any other contractual provision. *Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 17-18 (2d Cir. 2001).

*Levy* acknowledged that blockers can be invalid or ineffective, but did not adopt the factors Plaintiff relies upon here. Instead, the Second Circuit conducted a contract analysis. As binding authority, *Levy* mandates that the Court analyze the Blockers' validity based on their plain language.

Indeed, if Plaintiff's arguments about the various factors it relies on were correct, the *Levy* court could not have upheld the very blocker provision at issue in that case. The *Levy* blocker was substantially weaker and less "enforceable" than the Blockers here. For instance, unlike the Blockers here, the *Levy* blocker did not provide that conversions above the cap would be "null and void," "treated as if never made," and "cancelled ab initio," or provide any other particular enforcement mechanism. (Mot. Ex. 2 ¶ 3.10.) Instead, it merely gave the investor the *right,* but

---

[2] Plaintiff also misrepresents the Blockers' clear terms, asserting that Hudson Bay could elect to *raise* the 9.99% threshold on 61 days' notice to BBBY. (Opp. at 5 (citing Cplt. ¶ 131).) The Blockers say the *exact opposite*, explicitly prohibiting Hudson Bay from ever raising the Maximum Percentage above 9.99%. (Cplt. Ex. A § 4(d) (the Maximum Percentage may only be changed to "any other percentage not in excess of 9.99%"); Cplt. Ex. C § 1(f) (same).)

4

not the obligation, to revoke such conversions. (*Id.*) Additionally, unlike the Blockers here, the blocker in *Levy* was actually *freely amendable* by the parties. (Mot. Ex. 2 ¶ 6.4.) Yet the *Levy* court still upheld the blocker as effective and binding. Put simply, Plaintiff's approach based on cherry-picked factors asks the Court to disregard binding, applicable Second Circuit precedent.[3]

The one case Plaintiff cites in which a challenge to a blocker provision survived a motion to dismiss is the exception that proves the rule. *Roth v. Solus Alt. Asset Mgmt. LP*, 124 F. Supp. 3d 315 (S.D.N.Y. 2015) ("*Solus I*"), was an unusual case in which the defendant stockholder, Solus, purchased convertible notes while *already* a greater than 10% beneficial owner of the issuer's stock. *Id.* at 318. Later, in connection with the issuer's restructuring, Solus and the issuer entered into a new contract in which Solus "irrevocably agree[d]" not to convert its convertible notes. *Id.* The parties disputed whether that agreement effectively divested Solus of beneficial ownership of the shares underlying the notes that it had previously beneficially owned. *Id.* at 319.

The *Solus I* court initially found that the "blocker" at issue was "not really a 'blocker' (or 'cap') at all," but a "one-time divestment mechanism." *Id.* at 323. In other words, "rather than *preventing* Solus from attaining insider status . . ., the [provision] purport[ed] to *eliminate* it." *Id.* (emphasis added). In denying a motion to dismiss, the court observed that these unusual circumstances distinguished the case from those upholding blockers, noting that "the parties could not identify any cases where a conversion cap or blocker was executed *after* a shareholder became a greater than 10% owner." *Id.* Later, on summary judgment, the court nevertheless concluded

---

[3] Plaintiff's assertion that the Romeo & Dye treatise suggests the *Levy* court "endorse[d]" the SEC's amicus brief is entirely disingenuous. (Opp. at 11.) Plaintiff conveniently *omits* the source the treatise was citing to—the recently overturned decision in *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842 (1984), *rev'd*, *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). Moreover, Plaintiff also omits Romeo & Dye's observation that "[m]ost courts" addressing the validity of blockers "have *not* expressly applied the criteria set forth in the SEC's amicus brief." Romeo & Dye § 2.03[5][j][ii] (emphasis added); Mot. Arg. § II.

that, despite this difference, the provision was valid and binding, and dismissed the Section 16 claim. *See Roth v. Solus Alternative Asset Mgmt. LP*, 258 F. Supp. 3d 364, 369-71 (S.D.N.Y. 2017) ("*Solus II*"). This case involves more standard blockers than the court addressed in *Solus*. This Court is bound to follow *Levy* and its progeny, enforce the Blockers, and dismiss Plaintiff's claim.

### III.     Plaintiff Does Not, and Cannot, Allege that the Blockers Were "Illusory"

In any event, Plaintiff's Complaint fails to allege a plausible claim for relief under any of the factors it relies on. As noted above, if those factors were applied as Plaintiff suggests, virtually all blocker provisions—and certainly those upheld and enforced in *Levy* and its progeny—would be deemed ineffective and invalid.

***Compliance in Fact***: Plaintiff's argument that Hudson Bay and BBBY did not, in fact, comply with the Blockers distorts Rule 13d-3's concept of beneficial ownership. Specifically, Plaintiff's theory is based on the nonsensical proposition that Hudson Bay could somehow sell the same shares twice. Plaintiff's argument amounts to an assertion that, after Hudson Bay sold stock, it retained "dispositive power" over that stock until the trade settled two days later. (Opp. at 18-21.) This is ridiculous. Under the securities laws, once Hudson Bay sent an exercise or conversion notice to BBBY, Hudson Bay was "deemed to own" the shares resulting from the exercise or conversion. As the Opposition acknowledges, Hudson Bay could then immediately sell those shares on the open market. 17 C.F.R. § 242.200(b); Opp. at 4. Once Hudson Bay, in turn, *sold* those shares to a third-party buyer, that *buyer* was "deemed to own" the shares. Hudson Bay obviously could *no longer sell* those shares to someone else. In other words, Hudson Bay lost "dispositive power," and therefore beneficial ownership, at the moment of the sale.

Plaintiff's argument that Hudson Bay retained dispositive power until "settlement"—the mere ministerial act of Hudson Bay's *broker* transferring the shares from Hudson Bay's account to the buyer's—makes no sense. It is flatly inconsistent with the securities laws, under which a

6

"sale" is completed when "the investors' rights [become] fixed and irrevocable," not when the sold shares later "settle" into the buyer's account. *Avalon Holdings Corp. v. Gentile*, 597 F. Supp. 3d 640, 651-52 (S.D.N.Y. 2022) ( "technicalities" like "[s]ettlement of the contracts or delivery of the shares" are "of no import" to determine when a sale occurs "for Section 16(b) purposes") (citation omitted); *see also Connell v. Johnson*, 2020 WL 2748439, at *2 (S.D.N.Y. May 27, 2020) (same); *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67 (2d Cir. 2012) (a securities sale "take[s] place when the parties become bound to effectuate the transaction"). Plaintiff cites no authority for its argument that an investor retains dispositive power after a sale.[4]

This infirmity dooms Plaintiff's allegations. Every single one of Plaintiff's purported beneficial ownership "calculations"—including in its tables—artificially and unlawfully inflates the "numerator" (i.e. shares Hudson Bay beneficially owned) by including shares Hudson Bay had *already irrevocably sold to a third party*. (*See, e.g.*, Opp. at 19.) Plaintiff presents no calculations that correct this fundamental legal error. Indeed, Plaintiff does not—and cannot—dispute that, without double-counting these sold shares, Hudson Bay never exceeded 10% beneficial ownership. Put simply, Plaintiff's purported beneficial ownership calculations are wrong as a matter of law, and its allegations that the Blockers were violated are therefore not well-pled.

Plaintiff's remaining irrelevant hypotheticals about how Hudson Bay *could have* exceeded 10% beneficial ownership by purchasing stock on the open market are irrelevant. (Opp. at 21-22.) Plaintiff does not allege that Hudson Bay ever attempted to cover its sales with open market purchases because such purchases never occurred. Indeed, doing so in the manner Plaintiff

---

[4] Plaintiff's citation to *Chechele v. Standard General LP*, 2021 WL 2853438 (S.D.N.Y. July 8, 2021) is inapposite. In that case, a court found that an investor retained residual *voting* power (not *dispositive* power) after selling its shares. The Opposition does not even attempt to argue that Hudson Bay retained such residual voting power here. It did not. As explained in the Motion, the Blockers unambiguously extinguished any such residual voting power. (Mot. at 23 n.6.)

7

suggests would have likely violated the securities laws. *See* 17 C.F.R. § 242.200. Plaintiff cannot defeat the Blockers through speculative, unalleged hypotheticals.

**_BBBY's Ability to Enforce_**: Plaintiff's arguments about BBBY's ability to enforce the Blockers are meritless. Plaintiff ignores the Blockers' self-effectuating plain language, which rendered conversions or exercises in excess of the cap "null and void," "treated as if never made," and "cancelled ab initio." (Cplt. Ex. A § 4(d); Ex. C § (1)(f).)

Instead, Plaintiff attempts to distract the Court with baseless arguments involving irrelevant documents and increasingly absurd hypotheticals. In addition to Plaintiff's meritless "Side Letter" argument addressed above, Plaintiff misrepresents the language in Hudson Bay's conversion and exercise requests. In each request, Hudson Bay affirmed that the conversion or exercise would not exceed the "Maximum Percentage," a concept that the Blockers themselves *specifically define* to include shares held by any potential "group" members. (Cplt. Ex. A §§ 4(d), 31(g); Ex. C §§ 1(f), 19(d).) That distinguishes this case from *Greenberg v. Hudson Bay Master Fund Ltd.*, in which the blocker's restrictions were limited to the holder and its "affiliates" only. 2015 WL 2212215, at *6-7 (S.D.N.Y. May 12, 2015). More fundamentally, unlike *Greenberg*, Plaintiff here *has not pled* that any "group" activity caused the Blockers to be violated.[5]

**_Bona Fide Negotiations_**: As Plaintiff acknowledges, BBBY admitted in its bankruptcy filings that its transactions with Hudson Bay resulted from "hard fought," "extensive," and "difficult" negotiations, during which BBBY was represented by sophisticated counsel and advisors such as Kirkland & Ellis and Lazard. (Opp. at 13-14.) Clearly, the Blockers were a term of this "hard-fought" deal. Indeed, the Blockers benefited BBBY by, among other things, limiting

---

[5] Despite Hudson Bay Master Fund Ltd.'s inclusion in the caption, the *Greenberg* court's decision did not apply to Hudson Bay, as it had already been dismissed from the case.

Hudson Bay's ability to obtain a control position, which helped to ensure that change-of-control provisions constituting default under BBBY's debt documents were not triggered. (*See* Supp. Decl. of Kaitlin D. Shapiro Ex. 1 (BBBY Form 8-K (Feb. 10, 2023), Ex. 10.1, Annex A § 7.01(m) ("Change in Control" constituted an event of default of BBBY's credit agreement)).) Plaintiff's attempt to avoid BBBY's admissions by distinguishing between "economic terms" of the financing and the Blockers makes no sense—both the "economic terms" and the Blockers were part of the parties' overall contractual bargain.

***Freely Waivable/Amendable***: Plaintiff's argument that the Common Stock Warrant Blocker was invalid because it was amendable rests on the baseless notion that a blocker contained in a contract can never be valid if the contract could, potentially, be amended. This argument runs afoul of decades of case law finding such "purely contractual" blocker provisions valid and enforceable. That includes *Levy*, which involved a contractual blocker *and* lacked a provision barring the parties from amending it. (*See* Mot. Ex. 2 ¶ 6.4.) Even Plaintiff's banner case rejected a similar argument, granting summary judgment to Solus. *Solus II*, 258 F. Supp. 3d at 369-70 (finding that an "irrevocable" agreement not to convert notes was effective notwithstanding that it was only reflected in an "extraneous contract" between the issuer and the investor).

In any event, Plaintiff does not, and cannot, meaningfully contest the fact that the Blockers included *specific provisions* barring their waiver or amendment. Nor does Plaintiff cite a single case suggesting that parties are free to disregard such a "no amendment" provision. None of the cases Plaintiff cites involved such an anti-amendment provision, and only one even applied New York law. (Opp. at 14-16.) Crucially, Plaintiff never alleges that the parties ever *attempted* to amend or waive the Blockers in violation of the anti-amendment provision.

***No Limit on Number of Conversions/Exercises***: Plaintiff concedes that a blocker need not

9

contain "limits on the number of conversions and exercises" to be effective. (Opp. at 17.) Plaintiff likewise does not contest that Hudson Bay's serial conversions and exercises were entirely permissible under both its contracts with BBBY and Section 16(b) itself. *See Levy*, 263 F.3d at 16; *Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 445, 448 (S.D.N.Y. 2001).

***No Independent Regulatory Scheme***: Plaintiff acknowledges that an "independent compliance function" cannot possibly be a requirement for an effective blocker provision. (Opp. at 13.) The blockers upheld in *Levy* and the other cases cited in the Motion did not serve such a function, nor do the vast majority of blockers. Plaintiff's citation to a few cherry-picked, decades-old cases that happened to involve a separate regulatory scheme does not change that fact.

### IV.    Plaintiff's "Scheme to Evade" Argument is a Red Herring

Plaintiff's "alternative" argument that the Blockers constituted a scheme to evade under Rule 13d-3(b) is nothing more than a re-framing of its argument that the Blockers are an unenforceable "sham." For all the reasons explained in this Motion, the Blockers are valid, binding, and enforceable. They are precisely the type of structure designed to prevent Section 16(b) liability that the Supreme Court, the Second Circuit, and other courts have routinely upheld.

Notwithstanding the Opposition's attempts at mathematical misdirection, Side Letter mischaracterization, and deflections of culpability for BBBY's demise, Plaintiff cannot demonstrate a scheme to defraud, or any other basis to defeat the Blockers. Notwithstanding its various aspersions, Plaintiff cannot dodge the unambiguous contractual language it inherited from its predecessor. Plaintiff requests radical relief: to invalidate Blockers that are binding and effective on their face. No court has ever done so, and this Court should not do so here.

### CONCLUSION

For the reasons stated herein and in the Motion, the Motion should be granted, and Plaintiff's Complaint should be dismissed with prejudice.

Dated: October 2, 2024
      New York, New York

                         Respectfully Submitted,

                          /s/ *Douglas A. Rappaport*
                        Douglas A. Rappaport
                        Kaitlin D. Shapiro
                        Richard J. D'Amato
                        Michael Chen
                        AKIN GUMP STRAUSS HAUER & FELD LLP
                        One Bryant Park
                        New York, NY 10036

                        *Counsel for the Defendants HBC Investments LLC and Hudson Bay Capital Management LP*